## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| GERRY W. FOWLER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-2095C |
| | ) | |
| v. | ) | Filed: January 6, 2025 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Gerry W. Fowler, Sr., a retired member of the United States Navy, challenges a decision of the Board for Correction of Naval Records ("BCNR" or "Board") denying his request for disability retirement. Before the Court is the Government's Motion to Dismiss for Lack of Jurisdiction. The Government contends that the Court lacks subject-matter jurisdiction because more than six years have elapsed since Mr. Fowler's claim accrued, and thus the claim is barred by the statute of limitations. For the reasons stated below, the Court **GRANTS** the Government's Motion.

## I.    BACKGROUND

### A.    Factual History

Mr. Fowler enlisted in the Navy in September 1974. *See* Pl.'s Compl. ¶ 5, ECF No. 1. He served continuously on active duty until he transferred to the Naval Reserve in September 1978. *Id.* Before his release from active duty, Mr. Fowler underwent a pre-separation physical evaluation. *Id.* ¶ 9. Mr. Fowler did not disclose any defects or conditions during the evaluation, and no disqualifying defects were noted. *Id.*

In 1980, while serving in the Naval Reserve, Mr. Fowler was hospitalized due to a

psychotic episode in which he experienced auditory hallucinations, paranoid delusions, and a deterioration in daily living skills. *Id.* ¶ 10. Mr. Fowler was diagnosed with paranoid schizophrenia and began outpatient care with a psychiatrist for nine months. *Id.* ¶¶ 10–11. Mr. Fowler was hospitalized twice in 1981 and once in 1990 for symptoms related to his schizophrenia diagnosis. *Id.* ¶¶ 11–13.

On August 17, 1991, Mr. Fowler was assessed by Dr. Kearn Hinchman of the United States Air Force and was diagnosed with "schizophrenia, paranoid type, chronic." *Id.* ¶ 14. Dr. Hinchman noted that Mr. Fowler experienced hallucinations, paranoid delusions, ideas of reference, deterioration of occupational function, deterioration of daily living functions, and lack of initiative and energy. *Id.* As such, Dr. Hinchman determined that Mr. Fowler had marked impairment for military duty and total impairment for civilian industrial adaptability. *Id.* Dr. Hinchman referred Mr. Fowler to the Department of the Navy's Medical Evaluation Board ("MEB") for a disability evaluation. *Id.* ¶ 15.

On October 22, 1991, the Department of the Navy's Physical Evaluation Board ("PEB") issued preliminary findings to Mr. Fowler determining that he was not physically qualified for service based on his schizophrenia diagnosis. *Id.* ¶ 16. The PEB indicated that Mr. Fowler would be "discharged, or transferred to a retired status, as appropriate, as provided for in 10 U.S.C. § 1004." *Id.* Mr. Fowler alleges that there is no evidence that he received, reviewed, or understood the PEB's preliminary findings. *Id.* He further alleges that he was not advised about the Disability Evaluation System ("DES") or assigned a counselor or adviser to assist him with the PEB and DES processes. *Id.*

On December 3, 1991, Mr. Fowler received another document informing him of the PEB's preliminary findings. *Id.* ¶ 19. Mr. Fowler initialed the document, indicating that he accepted the

PEB's preliminary findings and did not request reconsideration.  *See id.*  Mr. Fowler alleges that he was then advised to retire under the Temporary Early Retirement Authority ("TERA").[1]  *Id.* ¶ 20.  In 1992, the Navy medically separated Mr. Fowler from the Naval Reserve, transferred him to retired service without pay, and placed him on the Temporary Disabled Retirement List ("TDRL"), where he has since remained.[2]  *Id.* ¶¶ 5, 6, 16.

In 1995, Mr. Fowler filed an application with the BCNR requesting that he be removed from the TDRL and placed on the Permanent Disability Retirement List ("PDRL").  *Id.* ¶ 22.  The BCNR denied Mr. Fowler's 1995 application and denied his subsequent requests for reconsideration in June 2001, January 2002, August 2004, and September 2010.  *Id.*  Mr. Fowler filed another application with the BCNR in 2016 requesting disability retirement.  *Id.*  On February 10, 2017, the BCNR responded, denying Mr. Fowler's request for disability retirement and administratively closing his case.  *Id.*

In 2018, he sought the assistance of his congressman, who advised Mr. Fowler that, per Navy Personnel Command, his only available avenue for relief was in federal court.  *Id.* ¶ 23.  Mr. Fowler submitted a copy of the correspondence between the Navy and his congressman, which

---

[1] As a part of the National Defense Authorization Act, Congress enacted TERA for fiscal years 1992 and 1993.  Pub. L. No. 102–484, § 4403, 106 Stat. 2315, 2702–04 (1992).  TERA provided the Secretary of Defense with a "temporary additional force management tool with which to effect the drawdown of military forces through 1995."  *Id.* § 4403(a), 106 Stat. at 2702.  One of TERA's provisions gave the Secretaries of the military branches temporary authority to lower the number of years of service required for an officer to be retirement eligible from 20 years to 15 years.  *See id.* § 4403(b), 106 Stat. at 2702.

[2] Service members who are separated or retired are not assigned disability ratings for non-duty related injuries and therefore are not entitled to disability compensation for such injuries.  *See* 10 U.S.C. §§ 1201(b), 1203(b).  A person placed on the TDRL is considered temporarily retired and therefore receives only retired member pay.  *Id.* § 1202.  That pay status continues unless and until the retired member "is appointed, reappointed, enlisted, or reenlisted."  *Id.* § 1211(d)(3).  Section 1210 sets out procedures for when a service member is placed on the TDRL, such as the timing for periodic examinations.  *Id.* § 1210.

indicates that Mr. Fowler "retired under [TERA] and is currently receiving non-regular reserve pay." Ex. 1 to Pl.'s Resp. to Mot. to Dismiss, ECF No. 7-1.[3] Although not alleged in the Complaint, in his opposition brief, Mr. Fowler contends that this was the first time he was made aware that he retired under TERA. Pl.'s Resp. to Mot. to Dismiss at 3, ECF No. 7. He subsequently petitioned the BCNR for relief in October 2019, which the Board denied on February 16, 2020. *Id.*

## B.    Procedural History

On December 8, 2023, Mr. Fowler filed his Complaint in this Court. *See generally* ECF No. 1. Mr. Fowler contends that the Navy violated his due process rights by failing to properly counsel him about his rights under the DES, including failing to advise him of the consequences of being placed on the TDRL, and that the BCNR acted arbitrarily and capriciously by subsequently denying his request to be transferred to the PDRL and receive disability retirement pay. *Id.* ¶¶ 1, 29, 31. On February 12, 2024, the Government filed a Motion to Dismiss, arguing that the Court lacks subject-matter jurisdiction because more than six years have elapsed since Mr. Fowler's claim accrued. *See* Def.'s Mot. to Dismiss at 8–9, ECF No. 5. According to the Government, the accrual date here is the date of Mr. Fowler's separation from the Navy in 1992, following the PEB's evaluation of Mr. Fowler's disability in 1991, or at the latest the date the BCNR first denied Mr. Fowler's application for disability retirement pay in 1995. *Id.* at 8. Mr. Fowler disagrees, arguing that his claim is timely because it did not accrue until he first became aware of his TERA retirement in 2018 and the BCNR denied his application for the final time in

---

[3] Mr. Fowler's opposition brief and attached exhibits were filed under seal to protect personally identifiable information ("PII") contained therein. Because this opinion does not disclose PII, the Court has determined that the information quoted or referred to from Mr. Fowler's brief and exhibits may be publicly disclosed.

February 2020.  *See* ECF No. 7 at 2–3.  The Government filed its Reply on May 1, 2024.  Def.'s

Reply, ECF No 10.  The motion is therefore ready for decision.[4]

## II.    LEGAL STANDARDS

### A.    Jurisdiction of the Court of Federal Claims

Like all federal courts, the United States Court of Federal Claims is a court of limited

jurisdiction.  *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).  Pursuant to the Tucker

Act, the Court's jurisdiction extends over "any claim against the United States founded either upon

the Constitution, or any Act of Congress or any regulation of an executive department, or upon

any express or implied contract with the United States, or for liquidated or unliquidated damages

in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act is "only a jurisdictional

statute; it does not create any substantive right enforceable against the United States for money

damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Therefore, the substantive right

must appear in another source of law, such as a "money-mandating constitutional provision, statute

or regulation that has been violated, or an express or implied contract with the United States."

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

---

[4] The Government also moved to dismiss Mr. Fowler's Complaint for lack of subject-matter jurisdiction on the ground that he did not identify a money-mandating source of law.  *See* ECF No. 5 at 9.  While Mr. Fowler's Complaint does not expressly cite a money-mandating source of law, it has sufficiently "made a non-frivolous allegation that [he] is within the class of plaintiffs entitled to recover under [a] money-mandating [statute]."  *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).  As can be clearly inferred from the Complaint, Mr. Fowler's claim arises under the Military Disability Retirement Pay Act.  *See* ECF No. 1 ¶¶ 18, 22, 26; *see also* 10 U.S.C. § 1201.  Pursuant to that statute, the Secretary may retire a service member with pay if he determines the member is unfit to perform the duties of his or her office, grade, rank, or rating because of physical disability.  *See* 10 U.S.C. § 1201(a).  The Court has jurisdiction to review claims under the statute because a finding that a service member has a qualifying disability entitles that member to monetary benefits.  *See Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005); *Fisher v. United States*, 402 F.3d 1167, 1174–75 (Fed. Cir. 2005).  Accordingly, this opinion focuses solely on the issue of jurisdictional timeliness.

A claim for military disability retirement pay, just as every other claim filed in this Court, is subject to the statute of limitations set forth in 28 U.S.C. § 2501. As such, it is barred unless "filed within six years after such claim first accrues." 28 U.S.C. § 2501; s*ee Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). The limitations period is jurisdictional and not subject to equitable tolling. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008).

**B.      Standard of Review for Rule 12(b)(1) Motions**

A challenge to the Court's subject-matter jurisdiction over all or part of the claims asserted in a complaint is properly raised by motion under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Addressing jurisdiction at the initial pleadings stage is essential because jurisdiction is a threshold requirement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co.*, 523 U.S. at 94 ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all the non-moving party's uncontroverted factual allegations and draws all reasonable inferences in the light most favorable to that party. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)); *see also Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). If jurisdictional facts are disputed, the non-moving party may not rest on mere allegations; instead, he must produce competent proof sufficient to support his allegations by a preponderance

of evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

## III. DISCUSSION

Mr. Fowler's claim for disability retirement pay is time barred because it accrued more than six years before he filed the Complaint and cannot be saved by the accrual suspension rule. As such, the Court must dismiss Mr. Fowler's Complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).

**A.    Plaintiff's Claim for Disability Retirement Pay Is Barred by the Statute of Limitations.**

Claims brought in this Court are subject to a six-year statute of limitations, which bars every claim that is otherwise in the Court's jurisdiction "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim under the Tucker Act generally accrues "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 177 Ct. Cl. 234, 240 (1966)). For military pay claims involving disability retirement, the "generally accepted rule" is that claim accrual occurs when "the appropriate board either finally denies such a claim or refuses to hear it." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing *Friedman v. United States*, 310 F.2d 381 (Ct. Cl. 1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932 (1963)). In other words, it is the decision "by the first statutorily authorized board which hears or refuses to hear the claim [that] is the triggering event." *Id.*

If, as here, "the service member requested review by an appropriate board [before discharge] and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge." *Chambers*, 417 F.3d at 1225 (citing

7

*Real*, 906 F.2d at 1560).  A later request for review of a disability determination submitted to a corrections board does not toll the statute of limitations on such claim, "nor does a new claim accrue upon denial of the petition by the corrections board."  *Real*, 906 F.2d at 1560 (citing *Friedman*, 310 F.2d at 390, 396–98); *see also Jones v. United States*, 30 F.4th 1094, 1100–01 (Fed. Cir. 2022).  However, where a "service member had neither requested nor been offered consideration by a disability board prior to discharge," the United States Court of Appeals for the Federal Circuit has (with one exception not relevant here) held that the later denial of a petition by a corrections board "triggers the statute of limitations."  *Chambers*, 417 F.3d at 1226 (citing *Real*, 906 F.2d at 1560).

In the instant case, an informal PEB first determined Mr. Fowler was not physically fit for service in 1991.  *See* ECF No. 1 ¶¶ 16, 19.  He was medically separated from the Naval Reserve, transferred to retired service without pay, and placed on the TDRL in 1992.  *See id.* ¶¶ 5, 6, 16.  At all times relevant to Mr. Fowler's claim, the PEB was a "proper and competent tribunal" to make a disability determination.  *Fuller v. United States*, 14 Cl. Ct. 542, 544 (1988); *see Quesada v. United States*, 136 Fed. Cl. 635, 643 (2018) (citing *Chambers*, 417 F.3d at 1225 & n.2).  Because Mr. Fowler accepted the informal PEB's findings and did not seek reconsideration, the PEB's decision became final and was "sufficient to trigger the running of the statute of limitations on [his] disability retirement claim."  *Jeun v. United States*, 128 Fed. Cl. 203, 214 (2016); *see also Jones*, 30 F.4th at 1101 n.4.  Therefore, Mr. Fowler's claim accrued at the time of his separation in 1992, since at that time his claim for disability retirement pay had been considered and denied by an appropriate board.  *See Jones*, 30 F.4th at 1103 (holding that claim accrued at time of discharge because an appropriate board had denied claim prior to discharge); *Colon v. United States*, 35 Fed. Cl. 515, 520 (1996) (holding that claim accrued upon discharge after a PEB made

a final determination concerning disability retirement pay). Based on the six-year statute of limitations, Mr. Fowler's claim for relief must have been filed by no later than 1998. *See Chambers*, 417 F.3d at 1225.[5]

To circumvent this jurisdictional bar, Mr. Fowler contends that his claim is timely because he only first became aware that he retired under TERA in 2018 when he received a copy of a letter sent by Navy Personnel Command to his congressman. *See* ECF No. 7 at 3–4; *see also* ECF No. 1 ¶ 23. Citing Department of Defense Instruction ("DoDI") 1132.46, he claims that "under TERA, '[s]ervice members pending disability separation and who are eligible for a TERA retirement at the time of their disability evaluation may elect to be separated for disability or retired for length of service.'" ECF No. 7 at 3 (quoting DoDI 1132.46, ¶ 4.2(c)(2)).[6] Mr. Fowler explains that this realization prompted his most recent attempt to obtain relief from the BCNR in 2019, which the Board ultimately denied on February 16, 2020. ECF No. 7 at 3. According to Mr. Fowler, TERA retirement raises "a separate issue entirely," which no prior Board decision addressed. *Id.*; *see id.* at 3–4 ("[T]he determinative issue was whether Mr. Fowler was properly notified of his options prior to electing retirement under TERA (a decision Mr. Fowler does not recall making).").

Other than references to TERA, these allegations are absent from the Complaint, but in any

---

[5] Alternatively, the Government is correct that if Mr. Fowler's disability retirement claim did not accrue at the time of his 1992 separation, then it accrued, at the latest, on August 31, 1995, when the BCNR issued a final decision denying his disability retirement claim. *See* ECF No. 5 at 8 (citing ECF No. 1 ¶ 22); *see also Chambers*, 417 F.3d at 1224. Using this date, Mr. Fowler's claim became time barred as of September 1, 2001. *See Chambers*, 417 F.3d at 1225.

[6] Mr. Fowler's opposition brief does not identify the effective year of the instruction on which he relies. A current version of the instruction includes the cited provision, but it became effective on December 21, 2018, approximately 26 years after Mr. Fowler's separation. *See* Temporary Early Retirement Authority (TERA) for Service Members, DoDI 1332.46 (Dec. 21, 2018), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/133246p.pdf?ver=2018-12-21-122012-280.

event they are unavailing. The timing of Mr. Fowler's awareness of his retirement under TERA is not what triggered accrual for purposes of his disability retirement pay claim. Rather, the question at hand is whether and when his claim for disability retirement was first adjudicated by a statutorily authorized board. *See Jones*, 30 F.4th at 1100 ("The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event." (quoting *Real*, 906 F.2d at 1560)). In this case, adjudication occurred by way of the 1991 PEB determination, starting the clock on the statute of limitations upon Mr. Fowler's 1992 separation. *See id*. His successive permissive petitions to the BCNR did not toll the statute of limitations or create a new cause of action. *See id.* at 1101 ("A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board." (quoting *Real*, 906 F.2d at 1560)).

Mr. Fowler's attempt to draw a distinction between requesting transfer to the PDRL and requesting disability retirement pay fails. *See* ECF No. 7 at 3 (arguing that "the BCNR had been erroneously analyzing his application as a disability evaluation case"). A reservist's placement on the PDRL necessarily implies a finding that they are eligible for military disability retirement, as placement requires a permanent disability rating of greater than 30 percent. 10 U.S.C. § 1201(b)(3)(B). Thus, a request for transfer to the PDRL is a request to be found eligible for disability retirement. Moreover, even assuming a source of authority similar to paragraph 4.2(c)(2) of DoDI 1332.46 existed in the relevant 1991–1992 timeframe, any claim based on the Navy's failure to counsel Mr. Fowler about such authority before transferring him to retired service without pay and placing him on the TDRL also accrued at the time of his separation.

Accordingly, the Court finds that Mr. Fowler's Complaint is barred by the statute of limitations because it was filed more than six years after his claim for disability retirement pay

first accrued.

**B.    The Accrual Suspension Rule Does Not Apply.**

To the extent Mr. Fowler argues that the accrual suspension rule should apply, this argument also fails.  As explained by the Federal Circuit, such rule "provides that 'the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed.'" *Jones*, 30 F.4th at 1103 (quoting *Martinez*, 333 F.3d at 1319).  The accrual suspension rule "is strictly and narrowly applied." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985).  The plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Martinez*, 333 F.3d at 1319 (internal quotations omitted) (quoting *Welcker*, 752 F.2d at 1580).  "The only relevant point in time for a disability retirement determination is 'the time of the determination.'" *Jones*, 30 F.4th at 1105 (quoting 10 U.S.C. § 1201(b)(3)(B)).  Accordingly, "[t]he accrual suspension rule is only implicated if the individual was unaware of the nature of the disability at that time." *Id.*

Mr. Fowler does not allege that he was unaware of his schizophrenia diagnosis or that his condition was inherently unknowable.  Instead, Mr. Fowler's Complaint details his schizophrenia symptoms, diagnosis, hospitalizations, and subsequent treatment prior to his discharge in 1992. *See, e.g.*, ECF No. 1 ¶¶ 10–14.  Further, the PEB's 1991 findings and the 1995 BCNR decision specifically address Mr. Fowler's diagnosis. *See id.* ¶ 16 ("On October 22, 1991, the PEB issued preliminary findings to Plaintiff that he was Not Physically Qualified for service based on a diagnosis of Schizophrenia Paranoid Type Chronic."); Ex. 1 to Def.'s Mot. to Dismiss at 2, ECF No. 5-1 ("The medical board report indicates that you had a psychotic break in 1980, and that you had been under continuous treatment for a major mental disorder since that time.").  Nor is there

11

evidence to suggest that the Government tried to conceal Mr. Fowler's disability determination or his retirement status. *See* ECF No. 1 ¶¶ 19 (acknowledging that Mr. Fowler accepted the PEB's preliminary findings in December 1991), 20 (alleging that Mr. Fowler "was advised to retire under [TERA]"); ECF No. 7 at 4 (arguing only that Mr. Fowler does not currently recall electing TERA retirement); ECF No. 10 at 14 (Navy Letter to Mr. Fowler, dated January 30, 1992) ("Your request to be transferred to the Retired Reserve has been approved. . . . You are therefore transferred to the Retired Reserve . . . effective 1 February 1992 . . . but without pay or allowances . . . .").

Although the Court is sympathetic to Mr. Fowler's situation and appreciates that he has pursued his challenges to the disability evaluation system over the last several decades as a pro se claimant, there is sufficient evidence to show that Mr. Fowler was aware of his ability to pursue a claim for disability retirement pay in this Court as far back as 1992 (or at the latest 1995), and the accrual suspension rule therefore does not apply.

## IV.  CONCLUSION

For these reasons, the Government's Motion to Dismiss (ECF No. 5) is **GRANTED** and Mr. Fowler's Complaint (ECF No. 1) is **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**


Dated: January 6, 2025                    */s/ Kathryn C. Davis*
                                          KATHRYN C. DAVIS
                                          Judge